Andrew A. and Evelyn L. Maduza v. Commissioner.
Maduza v. Commissioner
Docket No. 87242.
United States Tax Court
T.C. Memo 1961-249; 1961 Tax Ct. Memo LEXIS 99; 20 T.C.M. (CCH) 1302; T.C.M. (RIA) 61249; August 31, 1961
*99 Held, petitioners suffered a casualty loss of $1,000 in 1957 as the result of the destruction of trees, shrubs, flowers and vegetables by rain or flood. Andrew A. Maduza, pro se, RR #3, Woodstock, Ill. James E. Caldwell, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined a deficiency in petitioners' income tax for 1957 in the amount of $705.36. Petitioners sustained a casualty loss occasioned by the destruction of trees, flowers and shrubs in 1957. The sole question before us is the amount of the loss. Findings of Fact Some of the facts have been stipulated and they are found accordingly. Petitioners, Andrew *100 A. Maduza and Evelyn L. Maduza, are husband and wife and reside in Woodstock, Illinois. They filed their 1957 joint income tax return with the district director of internal revenue at Chicago, Illinois. Andrew A. Maduza will sometimes be referred to as petitioner. In 1957 petitioner owned a residence in Prospect Heights, Illinois. The residence lot was 99 feet wide and 1,319.5 feet deep. There were many trees and bushes on the lot and extensive beds of flowers and vegetables on the grounds next to the dwelling house. During the month of April 1957 the Chicago area rainfall was 6.09 inches. The average rainfall for April is 2.82 inches. During the month of July 1957 the Chicago area rainfall was 8.98 inches. The average rainfall for July is 2.73 inches. The rain caused petitioner's property to flood. The flooding destroyed trees, shrubs, beds of flowers and vegetables on petitioner's property. In April 1957 Cloher, a real estate salesman for a Chicago real estate firm, examined petitioner's property and listed it for sale at $23,500. Later, in about July 1957, Cloher looked at the property when the water was on the ground and quoted a figure of $19,500. In April 1958 Cloher again *101 looked at the property and took a 60 day exclusive listing of it for sale at $19,500. No offers were received for the property at the $23,500 listing and Cloher was unable to sell it at the $19,500 price. It was sold in 1959 for about $18,500. On petitioner's 1957 income tax return $4,146 was deducted as a "Casualty Loss arising from floods not covered by insurance" and the following schedule was attached as an itemization of the claimed loss. Estimated
Age
Unit
Total
Variety
(Years)
Quantity
Value
Value
Fruit trees lost
(rotted)
Cherry
Montmorency
8
5
$50.00
$ 250.00
Plum
Superior
8
5
65.00
325.00
Plum Cherry
Sapalta
8
5
50.00
250.00
Pear
Bartlett
8
2
65.00
130.00
Fruit Crop lost
100.00
Asparagus
Martha Washington
7
50
20.00
Asparagus
Martha Washington
3
100
20.00
Strawberry Plants
Premier
2
500
.30
150.00
Tulip Bulbs
Various
Various
10/12000
10.00
1,200.00
to $20
per C
Hyacinth Bulbs
Various
Various
300
2 to 3
150.00
per $1
Raspberry Plants
Various
Various
100
.35
35.00
Lilac Bush
French
10
2
12.50
25.00
Red Leaf Maple Tree
Schwedlers
8
1
65.00
65.00
Hollyhock Plants
Double
2
175
1.00
175.00
Rosa Multiflora
7
35
1.00
35.00
Walnut Tree
English
8
1
65.00
65.00
Delphiniums
Various Cal. plants
Various
50
5.00
250.00
Peonies
Various
Various
25
5.00
125.00
1 Acre of Sod (Rutted)
100.00
$3,470.00
Pump Rental
16.00
Trenching
160.00
6inch Tile (800 feet) laid
500.00
$4,146.00
*102 Plant and tree prices obtained from: Gilbert J. Klehm Nursery Palatine, Illinois
Petitioner arrived at the amounts in the above schedule by taking the items which had been destroyed and applying to them rates he obtained from local nurseries. Respondent disallowed the claimed loss in its entirety "for lack of substantiation that the amount claimed constitutes an allowable deduction under the provisions of section 165(c)(3) of the Internal Revenue Code of 1954." Opinion Petitioner is a certified public accountant. He tried his own case. Respondent admitted petitioner cultivated trees, shrubs, flowers and vegetables on the residence property and that he suffered a loss when the property was flooded and the trees, shrubs, flowers and vegetables were damaged. Respondent rightly states on brief that petitioner's evidence as to the extent of his loss is so unsatisfactory that the amount of his loss should be determined under Cohan v. Commissioner, 39 F. 2d 540. Petitioner's evidence of the amount of the loss is based upon two things: the schedule of estimated replacement cost gleaned from local nursery prices which he attached to the tax *103 return amounting to $3,470; [1] and Cloher's listing of the property for sale at $23,500 at some time before the casualty and at $19,500 at some time after it. The measure of a casualty loss under section 165(c)(3) on non-business property is the difference between the fair market value of the property immediately before and immediately after the casualty, and may not exceed the adjusted basis of the property. Helvering v. Owens, 305 U.S. 468; sec. 1.165-7(b), Income Tax Regs. While replacement cost, or estimated replacement cost, is not in itself a measure of the amount of the loss, it, like repair costs, serves as some evidence of the amount of the loss. See Sec. 1.165-7(a)(2)(ii), Income Tax Regs.
Respondent argues correctly that the listing of the property for sale does not rise to the dignity of an appraisal of its fair market value. Here Cloher, a real estate agent, *104 admitted that he was not an appraiser, and he demonstrated he had but little qualification to give a reasonable estimate of the fair market value of this property before and after the flooding. For instance it was his testimony that a listing price was the same as fair market value. Under the Cohan rule advocated by respondent we arrive at the conclusion that petitioners' casualty loss was $1,000. We so hold. Decision will be entered under Rule 50. Footnotes
1. This schedule, set forth in the findings of fact, includes in its $4,146 total $676 for improvements to the property: pump rental, trenching and tiling. The balance, $3,470, is the estimated replacement cost of the plants and trees destroyed.↩